**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Damen Flagg, | No.  CV-25-03515-PHX-SPL |
| Plaintiff, | |
| vs. | **ORDER** |
| Lyft Incorporated, et al., | |
| Defendants. | |

Before the Court is Defendant Lyft, Inc's Motion to Dismiss and Compel Arbitration (Doc. 20), Plaintiff Damen Flagg's Response (Doc. 21), and Defendant's Reply (Doc. 22). For the following reasons, the Motion will be granted to the extent that the matter will be stayed pending arbitration.[1]

## I.     BACKGROUND

Plaintiff is a driver for the rideshare company Lyft and brings various employment claims against the company. (Doc. 17 at 5–15). Plaintiff, proceeding *pro se*, filed a Complaint on August 13, 2025 in the Maricopa County Superior Court alleging Misclassification of Employment Status, Wage Suppression, Retaliation, Unenforceability of Lyft's Arbitration Agreement, and Violation of the Arizona Consumer Fraud Act. (*Id.* at 18–20). On September 24, 2025, Defendant removed this action to federal court. (Doc.

---

[1]     Because it would not assist in resolution of the instant issues, the Court finds the pending motion is suitable for decision without oral argument. *See* LRCiv. 7.2(f); Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1). Plaintiff filed an Amended Complaint on December 19, 2025, bringing the following claims against Defendant: (1) Misclassification of Plaintiff as an Independent Contractor; (2) Retaliation; (3) Failure to Pay Minimum Wage and Wage Suppression; (4) Unlawful Deductions, Expense Shifting, and Vehicle Cost Externalization; (5) Retaliation; (6) Declaratory and Injunctive Relief. (Doc. 17 at 5–15).

To register with Lyft as a driver or a rider, an individual is required to "either use the Lyft website or download the Lyft App, consent to the Terms of Service Agreement, and supply information such as the individual's first and last name, email address, and phone number." (Doc. 20-1 at 3). Therefore, one must agree to the Terms of Service Agreement (the "TOS Agreement") in order to use Lyft as a rider or driver. (*Id.* at 4). In addition to requiring users to accept the TOS Agreement upon registering, "Lyft periodically updates its Terms of Service Agreement," and drivers are required to "re-consent" to the updated Agreement "to continue offering rides through the Lyft App." (*Id.*). The TOS Agreement includes an arbitration provision, but also provides a way to opt out of the arbitration agreement. (*Id.* at 64).

Plaintiff created his Lyft account on February 19, 2020. (*Id.* at 7). He accepted the TOS Agreement several times: May 31, 2021, January 5, 2023, March 6, 2023, January 6, 2023, and April 18 2025. (*Id.* at 7). Plaintiff argues that he opted out of the arbitration agreement contained in the TOS Agreement on May 16, 2024, December 12, 2024, and January 6, 2025. (Doc. 21 at 5). On April 18, 2025, the most recent time Plaintiff agreed to the TOS Agreement, the December 13, 2024 Terms of Service were in place. (*Id.* at 7). The TOS Agreement included an arbitration agreement and stated in pertinent part:

> These provisions will, with limited exception, require you to: (1) waive your right to a jury trial, and (2) submit claims you have against Lyft to binding and final arbitration on an individual basis[.]

(Doc. 20-1 at 10). Plaintiff contends that he opted out of the arbitration agreement, which is also unenforceable as a matter of law. (Doc. 21 at 3). Defendant argues that, even if Plaintiff opted out of the arbitration agreement as late as January 6, 2025, he assented to

2

the TOS Agreement and its arbitration provision on April 18, 2025. (Doc. 20 at 2). Therefore, Defendant seeks to enforce the agreement. (*Id.*).

## II.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If a district court finds that an "arbitration agreement is valid and enforceable, then it should stay or dismiss the action pending arbitration proceedings to allow the arbitrator to decide the remaining claims, including those relating to the contract as a whole." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1276–77 (9th Cir. 2006).

## III.   DISCUSSION

The first issue here is whether a valid agreement to arbitrate exists. Defendant asserts that Plaintiff accepted the TOS Agreement most recently on April 18, 2025, and that this TOS Agreement included an arbitration provision. (Doc. 20 at 6; Doc. 20-1). Plaintiff does not dispute that he consented to the TOS Agreement on April 18, 2025 or assert that he opted-out of the arbitration provision at that time. (*See* Doc. 21). Instead, Plaintiff's argument focuses on earlier attempts to opt out of the arbitration provision in previous versions of the TOS Agreement. (*Id.* at 5). Plaintiff asserts that he opted out on three separate occasions between May 2024 and January 2025.[2] (*Id.*).

"In deciding whether parties have agreed to arbitrate, courts 'should apply ordinary state-law principles that govern the formation of contracts.'" *Myers v. Experian Info. Sols. Inc.*, 734 F. Supp. 3d 912, 919 (D. Ariz. 2024) (citing *First Options Chicago, Inc. v.*

---

[2]   Defendant argues that Plaintiff did not properly opt out on these occasions. (Doc. 20-1 at 65–67).

3

*Kaplan*, 514 U.S. 938, 944 (1995)). "In Arizona, for a valid contract to exist, the contract must 'manifest mutual assent, i.e., the parties' intent to be bound.'" *Id.* (citation omitted). Mutual assent is assessed through objective evidence, which "includes written and spoken words as well as acts." *Id.* (citing *Johnson v. Earnhardt's Gilbert Dodge, Inc.*, 132 P.3d 825, 828 (Ariz. 2006)).

Here, although Plaintiff made efforts to opt out of the arbitration provisions in 2024 and January 2025, he assented to the TOS Agreement on April 18, 2025 without making an attempt to opt out of the arbitration provision. Indeed, Plaintiff acknowledges that "[e]ach time Lyft required re-acceptance of updated terms, the arbitration clause was presented anew, along with a renewed right to opt out." (Doc. 21 at 5). Plaintiff does not assert that he opted out of the arbitration clause when he agreed to the TOS Agreement on April 18, 2025. (*See* Doc. 21). Therefore, it appears that there was mutual assent as to Plaintiff's acceptance of the TOS Agreement.

But Plaintiff also argues that the TOS Agreement is unenforceable as a matter of law due to "Lyft's conduct surrounding its Terms of Service, opt-out process, and subsequent retaliation." (Doc. 21 at 3). Plaintiff appears to argue that Defendant's requirement that users accept the updated TOS Agreements and denial of opt-out rights, renders any agreement unenforceable. (Doc. 21 at 6). However, there is no evidence before the Court that Defendant denies its drivers the ability to opt-out. Instead, the TOS Agreement informs drivers of their right to opt out of arbitration and provides instructions on doing so. (*See* Doc. 20-1).[3] Therefore, Plaintiff's argument that the arbitration

---

[3] The beginning of the TOS Agreement advises that the Agreement contains "provisions that govern how claims between you and Lyft can be brought" in Section 17. (Doc. 20-1 at 10). It also provides that "[a]s a driver or a driver applicant, you have an opportunity to opt out of arbitration with respect to certain claims as provided in Section 17." (*Id.* at 11).

Section 17 of the TOS Agreement, "Dispute Resolution and Arbitration Agreement," provides that a driver may opt out "by notifying Lyft in writing of your desire to opt out of arbitration for such Driver Claims, which writing must be dated, signed and delivered by electronic mail to arbitrationoptout@lyft.com." (Doc. 20-1 at 41). The writing must "clearly indicate your intent to opt out of this Arbitration Agreement," include "the name, phone number, and email address associated with your User Account," and must be

4

agreement is invalid because Defendant does not allow the ability to opt-out is not persuasive. The Court finds that a valid agreement to arbitrate exists.

Next, the agreement covers the claims at issue here. Plaintiff's claims arise under the Fair Labor Standards Act and the Arizona Minimum Wage Act. (Doc. 17 at 5–16). The arbitration agreement in Section 17 of the TOS Agreement states that "all disputes and claims between us" shall be resolved in arbitration including claims under the Fair Labor Standards Act and "state statutes, if any, addressing the same or similar subject matters, and all other federal and state statutory and common law claims." (Doc. 20-1 at 32). The arbitration agreement is expressly governed by the FAA. (*Id.*). Therefore, Plaintiff's claims fall squarely within the scope of the arbitration agreement.[4]

### IV.    CONCLUSION

The Court finds that because a valid agreement to arbitrate exists and encompasses the dispute at issue, the parties shall proceed in arbitration. Defendant requests that the Court dismiss the lawsuit and compel arbitration, or in the alternative, stay the proceedings pending arbitration. (*See* Doc. 20). Plaintiff contends that dismissing or staying the case would be improper. (Doc. 21 at 7). "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Defendant does not provide reasons explaining why dismissal, rather than a stay, is appropriate here. (*See* Docs. 20, 22). Therefore, the Court will stay the matter pending the resolution of the dispute through arbitration.

///

///

///

---

sent "within 30 days after the date this Agreement is executed by you." (*Id.*).

[4]    Moreover, the arbitration agreement provides that "[a]ll disputes concerning the arbitrability of a Claim (including disputes about the scope, applicability, enforceability, revocability or validity of the Arbitration Agreement) shall be decided by the arbitrator, except as expressly provided below." (Doc. 20-1 at 32).

Accordingly,

**IT IS ORDERED** that Defendant Lyft, Inc.'s Motion to Dismiss and Compel Arbitration (Doc. 20) is **granted in part and denied in part** to the extent that this case is **stayed**.

**IT IS FURTHER ORDERED** that the parties shall file a notice of arbitration with the Court, including the scheduled date of the arbitration, within **thirty (30) days** of the date of this Order, and the parties shall file joint status reports every **ninety (90) days** thereafter.

Dated this 2nd day of June, 2026.

Honorable Steven P. Logan
United States District Judge

6